**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| GIANT EAGLE, INC., and RISER FOODS COMPANY, | Civil No. 1:26-cv-698 |
| Plaintiffs, | Judge J. Philip Calabrese |
| v. | |
| WATER TOWER SQUARE LIMITED PARTNERSHIP; WATER TOWER CORPORATION; and CARNEGIE MANAGEMENT & DEVELOPMENT CORPORATION; | JURY TRIAL DEMANDED |
| Defendants. | |

**FIRST SUPPLEMENTAL COMPLAINT**

Plaintiffs Giant Eagle, Inc. and Riser Foods Company (together, "**Giant Eagle**"), by and through counsel, bring this Complaint against Defendants Water Tower Square Limited Partnership ("**Landlord**"), Water Tower Corporation, and Carnegie Management & Development Corporation (together, the three defendants are "**Defendants**").

**SUMMARY**

This matter arises out of Landlord's breach of its contractual obligations to its tenant, Giant Eagle—namely, Landlord's failure to (1) maintain Giant Eagle as an "additional insured" on its commercial liability insurance policy; (2) pay legal fees that Giant Eagle has incurred (and will continue incurring) in defending against a personal injury lawsuit filed against Giant Eagle in Ohio; and (3) commit to defending and indemnifying Giant Eagle in the event of any settlement, liability, and/or judgment on the claims asserted against Giant Eagle in that lawsuit.

The tragic events leading to this Complaint are as follows. Landlord owns, controls, and maintains the Water Tower Square Shopping Center in North Olmsted, Ohio. Giant Eagle leases a portion of a building in the Shopping Center from Landlord and operates a supermarket inside that building. On June 3, 2024, a woman named Margot Wood and her three-year-old son, Julian, were walking to their car in the Shopping Center parking lot, after leaving the supermarket where they had been shopping. When they were near their car, a woman named Bionca Ellis, apparently without provocation or warning, attacked and killed Julian and injured his mother, Margot, with a knife. The attacker was arrested and, after court-ordered medical intervention, has been declared competent to stand trial for murder this summer.

In October 2024, the parents of Julian Wood sued Giant Eagle, Inc. and two of its employees in the Court of Common Pleas of Cuyahoga County, Ohio on their own behalf and on behalf of Julian for damages suffered as a result of Ms. Ellis' criminal attack in the Shopping Center parking lot. The pending Lawsuit is captioned *Jared Wood, Individually, et al. v. Giant Eagle, Inc., et al.*, Case No. CV-24-105323 (Cuyahoga County) ("**Lawsuit**") (Complaint attached as Exhibit 1).[1] The Lawsuit alleges that Giant Eagle is liable under premises liability and negligence theories for allegedly failing to provide adequate security to prevent the attack that occurred entirely in the Shopping Center parking lot.

Giant Eagle does not own or control the Shopping Center parking lot where the attack occurred—Landlord does. Under the terms of its Lease with Giant Eagle, the Landlord expressly undertook all "duties, responsibilities and liabilities" with respect to "supervision, … *security and control*" of all "Common Areas," which includes the parking lot. Lease § 14.1 (A true and correct

---

[1] Per Chamber Rules 9(K), Giant Eagle is not re-attaching the exhibits to this First Supplemental Complaint because they are already on the docket at ECF 1. In addition, certified copies of the Cincinnati Insurance Company liability and umbrella policies in effect on June 3, 2024 are at ECF 30-1.

copy of the Lease, as amended and assigned, is attached as Exhibit 2).  In that Lease, Landlord also made at least two promises to Giant Eagle that apply where, like here, Giant Eagle is sued because of injuries that occurred in the Common Areas of the Shopping Center.

First, the Lease requires Landlord to add and maintain Giant Eagle as an "additional insured" on its commercial liability insurance policies covering "Common Areas" such as the Shopping Center parking lot.  Lease § 16.2 (Ex. 2).  But Landlord failed to add Giant Eagle as an additional insured and, accordingly, Landlord's insurer (Cincinnati Insurance Company) has refused to provide Giant Eagle with a defense to the Lawsuit.  As a result, Landlord itself must now reimburse (and pay going forward) Giant Eagle's defense costs incurred in defending the Lawsuit and must provide up to $7 million in liability coverage (the amount of coverage Landlord promised to provide under the Lease).

Second, Landlord made separate contractual promises to pay Giant Eagle's defense costs (including reasonable attorneys' fees) and indemnify and hold Giant Eagle harmless for claims implicating Landlord's alleged failures under the Lease and/or arising from injuries that occur in the Common Areas—i.e., claims *exactly* like those asserted by the Wood family in the Lawsuit. Lease §§ 10, 48 (Ex. 2).  Landlord has refused to accept these obligations and, accordingly, Giant Eagle seeks relief from this Court, including an order requiring Landlord to (i) reimburse Giant Eagle's defense costs incurred to date in defending the Lawsuit and pay those costs going forward; and (ii) indemnify Giant Eagle for any settlement payment or damages award.[2]

---

[2] Giant Eagle denies all claims asserted by Plaintiffs in the Lawsuit, and nothing in this Complaint should be construed as an admission of any allegations made against Giant Eagle or liability.  Giant Eagle asserts this Complaint without prejudice to its right to assert all applicable defenses and all claims against any other person or entity that may be responsible for, or liable to Giant Eagle for, the claims alleged in the Lawsuit.

**PARTIES**

1.      Plaintiff Giant Eagle, Inc. is a Pennsylvania corporation with its principal place of business at 700 Cranberry Woods Drive, Cranberry Township, Pennsylvania 16066.  Giant Eagle, Inc. is a private, family-owned corporation that owns and operates supermarkets and other businesses in five states.

2.      Plaintiff Riser Foods Company ("**Riser**") is a Delaware corporation with its principal place of business at 700 Cranberry Woods Drive, Cranberry Township, Pennsylvania 16066.  Riser Foods Company is a subsidiary of RFI Holding Company, a Delaware corporation, which is a subsidiary of Giant Eagle.

3.      Defendant Water Tower Square Limited Partnership is an Ohio limited partnership with its principal place of business at 27500 Detroit Road, Third Floor, Westlake, Ohio 44145.

4.      Water Tower Square Limited Partnership owns a shopping center in North Olmsted, Ohio known as Water Tower Square, in which various businesses lease space for retail stores ("**Shopping Center**").  The Lease identifies Water Tower Corporation as the General Partner of Water Tower Square Limited Partnership.  Lease § 1.4 (Ex. 2).

5.      Defendant Water Tower Corporation is an Ohio corporation with its principal place of business at 27500 Detroit Road, Suite 300, Westlake, Ohio 44145.

6.      Defendant Carnegie Management & Development Corporation is an Ohio corporation with its principal place of business at 27500 Detroit Road, Suite 300, Westlake, Ohio 44145.  Upon information and belief, Carnegie Management & Development Corporation is a partner and/or General Partner in Water Tower Square Limited Partnership, an owner and/or partner in Water Tower Corporation, and/or holds a direct ownership interest and/or position of

4

management, authority, and/or control over Water Tower Square Limited Partnership and/or Water Tower Corporation.

7. Carnegie Management & Development Corporation is the primary "named insured" on insurance policies issued by Cincinnati Insurance Company covering the period of June 15, 2022 through June 15, 2024. True and correct copies of those insurance policies are attached as Exhibit 3 ("**Policies**").

8. Water Tower Square Limited Partnership is also a "named insured" on the Named Insured Schedule in the Policies. Ex. 3 (Named Insured Schedule).

9. Water Tower Corporation and Carnegie Management & Development Corporation are referred to collectively herein as the "Landlord Affiliates."

## THE LEASE AGREEMENT

10. Giant Eagle operates a supermarket at 27264 Lorain Road, North Olmsted, Ohio 44070 ("**Supermarket**") pursuant to the Lease. Ex. 2.

11. On or about December 20, 2000, Giant Eagle, Inc. assigned the Lease to its affiliated company, Riser Foods Company. *See* Assignment of Lease, dated December 20, 2000 (attached as part of Ex. 2).

12. The Supermarket operated by Giant Eagle is located in one of the buildings within the Shopping Center.

13. Water Tower Square Limited Partnership is the "Landlord" under the Lease and Giant Eagle is the "Tenant." *See generally* Ex. 2.

14. Pursuant to the Lease, Giant Eagle leases only the "Premises" from Landlord. Lease at pg. 1 and §§ 1.8, 2 (Ex. 2).

15.     The Lease defines "Premises" to mean "all of that certain storeroom to be constructed in the Shopping Center outlined in red on Exhibit B attached hereto and made a part hereof." Lease §§ 1.8, 2 (Ex. 2).

16.     The area outlined as the "Premises" consists exclusively of the actual physical supermarket itself (i.e., the physical building from which Giant Eagle sells merchandise) and does not include the "Common Areas." *See* Exhibit B to Lease (Ex. 2).

17.     The Lease defines "Common Areas" as:

> [a]ll areas exterior to the Premises as shown on Exhibit B, which are available for the joint use and benefit of Landlord, Tenant and other tenants of the Shopping Center … including but not limited to ***parking areas***, ***parking spaces***, driveways, truck serviceways, passageways, sidewalks, entrances, exists, lighting facilities, common loading docks, … courts, service corridors, meeting areas, public restrooms, landscaped areas, utility lines exclusively serving the Common Areas and any other areas or improvements which may be provided by Landlord for the common use of the tenants of the Shopping Center.

Lease § 1.2 (Ex. 2) (emphasis added).

18.     Section 14.1 of the Lease further provides that Landlord is singularly responsible for the Common Areas, including all duties, responsibilities, and liabilities with respect to supervision, security and control of the Common Areas:

> Landlord hereby undertakes and assumes all duties, responsibilities and liabilities in regard to maintenance, repairs, replacement, operation, ***supervision***, use, striping, ***security and control*** of all Common Areas as shall comply with all present and future laws, ordinances, orders, rules, regulations, notes, notices of violations and requirements of public authorities appliable thereto, even though by law tenants may have such duty or responsibility solely or jointly with Landlord.

Lease § 14.1 (Ex. 2) (emphasis added).

19.     The Lease also contains an indemnification clause, which provides in relevant part:

6

> Landlord and Tenant agree to indemnify and hold each other harmless from and against any and all claims, damages or causes of action for damages brought on account of injury to any person or persons or property, or loss of life, arising out of the use, operation or maintenance of the Shopping Center (including the Common Areas) by Landlord and the Premises by Tenant, respectively.

Lease § 10 (Ex. 2).

20. Section 48 of the Lease provides that if Giant Eagle is sued by a third-party based on conduct that, ***if*** adversely determined, ***would constitute*** a violation of a covenant made by Landlord, then Landlord is responsible for the reasonable costs and expenses incurred by Giant Eagle in defending against such proceeding, including reasonable attorneys' fees.

> In the event either party is sued by a third party as a result of a violation of a covenant, warrant or agreement herein contained by the other party hereto (or which, if adversely determined, would mean that there had been a violation thereof), then the party who has violated the covenant or warrant shall be responsible for the reasonable costs and expenses in such action or proceeding against the non-violating party, including reasonable attorneys' fees.

Lease § 48 (Ex. 2).

21. The Lease requires that Landlord maintain at least $7 million in insurance that "shall cover all Common Areas and structural components of the Shopping Center ***and shall name Tenant as an additional insured***." Lease § 16.2 (Ex. 2) (emphasis added).

22. Section 19 of the Lease provides that "if Landlord shall at any time be in default in the observance or performance of any of the other covenants and agreements required to be performed and observed by Landlord hereunder," then Giant Eagle may "pay the … costs" to cure such default "all on behalf of and at the expense of the Landlord … including, but not limiting the same to the payment of any fees, costs and charges of or in connection with any legal action which may have been brought" and/or "bring suit for the collection of any amounts for which Landlord may be in default." Lease § 19 (Ex. 2).

23. Section 19 further provides that "Landlord shall reimburse Tenant for the amounts paid by Tenant, including reasonable costs and reasonable attorneys' fees, together with interest thereon at the Interest Rate." *Id.* § 19.

24. The Lease remains in effect as of the time of this Complaint.

25. At all times since execution of the Lease, Giant Eagle has operated the Supermarket inside the "Premises" as defined in the Lease.

26. Giant Eagle is not in default of any provision of the Lease.

### JURISDICTION AND VENUE

27. This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

28. Plaintiff Giant Eagle, Inc. is a Pennsylvania corporation with its principal place of business in Pennsylvania and Plaintiff Riser is a Delaware corporation with its principal place of business in Pennsylvania.

29. Defendant Water Tower Square Limited Partnership is an Ohio limited partnership. Upon information and belief, including a review of publicly available business records through the Ohio Secretary of State, none of the general or limited partners of Water Tower Square Limited Partnership are citizens of Pennsylvania.

30. Giant Eagle seeks reimbursement of more than $75,000 in legal fees and other expenses that have been incurred as of the time of this filing, and Giant Eagle seeks further reimbursement and/or payment of fees and other expenses that it will continue incurring until the Lawsuit is concluded.

8

31.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to Plaintiffs' claims occurred in this district, including but not limited to Landlord's refusal and failure to abide by its obligations to its Pennsylvania-based tenant (Giant Eagle) for such tenant's benefit in Pennsylvania, including its failure and refusal to add Giant Eagle as an additional insured and/or make the payments required pursuant to the Lease to Giant Eagle.

32.     Personal jurisdiction is proper in Pennsylvania because this matter arises out of and relates to Landlord's actions and failures to act in Pennsylvania for the benefit of its Pennsylvania-based tenant, as per the parties' contract (including those identified in the preceding paragraph), and the exercise of jurisdiction is constitutionally reasonable.

33.     Through the Lease, the parties established a long-term business relationship of at least 25 years.  *See* Lease § 1.15.

34.     The contract requires and/or envisions ongoing communications, mailings, and information exchanges, including from and into Pennsylvania.  *See, e.g.*, Lease §§ 26, 1.13 (notice to Giant Eagle under the contract must be provided in writing to Giant Eagle in Pennsylvania); Lease § 7.2 (Water Tower Square Limited Partnership will submit annual property tax bills to Giant Eagle and that Giant Eagle must pay those bills within 30 days of receipt); Lease § 14.5 (if Water Tower Square Limited Partnership wants to increase Giant Eagle's bill for its share of common expenses, Water Tower Square Limited Partnership must provide Giant Eagle with the "actual costs for the previous year" "together with copies of paid invoices and a reasonably detailed statement"); Lease § 5.4 (requiring Giant Eagle to maintain sales records at either the store or at its principal office in Pennsylvania).

35.     The parties have regularly exchanged written communications through the mail and e-mail.  Water Tower Square Limited Partnership, either directly or through its agent, sent written communications directly to Giant Eagle in Pennsylvania on many occasions.  For example, Water Tower Square Limited Partnership, either directly or through its agent, has sent many invoices for Common Area costs to Giant Eagle in Pennsylvania through ordinary mail throughout the duration of the contractual relationship.  Water Tower Square Limited Partnership, either directly or through its agent, has sent many other invoices (e.g., taxes) to Giant Eagle in Pennsylvania through ordinary mail throughout the duration of the contractual relationship.  Giant Eagle routinely sent paper checks from its Pennsylvania offices to Water Tower Square Limited Partnership through ordinary mail.

36.     In addition to the exchange of written materials, Giant Eagle and Water Tower Square Limited Partnership speak over the telephone on various matters. Water Tower Square Limited Partnership, either directly or through its agent, has initiated telephone calls and other communications to Giant Eagle in Giant Eagle's Pennsylvania offices.

37.     Water Tower Square Limited Partnership, either directly or through its agent, has listed Giant Eagle as its "ANCHOR" tenant in the Water Tower Square development for many years.  As of April 11, 2025, its website states: "Giant Eagle is one of [the] area's top performers."

**UNDERLYING FACTS**

38.     According to the Lawsuit, on June 3, 2024, a woman named Bionca Ellis attacked Margot Wood and her son, Julian Wood, with a knife in the Shopping Center parking lot.  As alleged in the Lawsuit, as a direct and proximate result of the attack, Julian Wood was killed and Margot Wood sustained injuries.  Ex. 1.

10

39. The attacker was arrested by police, charged with numerous crimes, and is in custody pending a criminal trial for murder this summer.

40. On June 27, 2024, an attorney representing the Wood family sent Giant Eagle's counsel a document preservation letter requesting that Giant Eagle preserve potentially relevant information. A true and correct copy of this Document Preservation Letter is attached as Exhibit 4.

41. On July 3, 2024, Giant Eagle sent notice to Landlord that Giant Eagle had received the Document Preservation Letter and that the fatal incident occurred in the parking lot (i.e., a "Common Area" under the Lease Agreement) for which Landlord is responsible. A true and correct copy of Giant Eagle's July 3, 2024 letter is attached as Exhibit 5.

42. Giant Eagle requested that Landlord provide a copy of the insurance policies naming Giant Eagle as an additional insured as required by the Lease. *Id.* Giant Eagle also asked Landlord to preserve potentially relevant information relating to the claims asserted in the Lawsuit. *Id.*

43. On July 18, 2024, Landlord responded that it had forwarded Giant Eagle's request to its insurance company, Cincinnati Insurance Company ("**CIC**"), and that CIC had retained counsel to represent CIC and counsel to represent Landlord. A true and correct copy of Landlord's July 18, 2024 response is attached as Exhibit 6.

44. On August 12, 2024, Giant Eagle, through counsel, received a letter from CIC dated July 31, 2024 purporting to acknowledge its "tender request." A true and correct copy of CIC's letter is attached as Exhibit 7.

45.     On September 4, 2024, Giant Eagle received a copy of an insurance policy issued to Carnegie Management & Development Corporation, numbered EPP 058 07 83 covering the Shopping Center.  Ex. 3.  A true and correct copy of the response letter is attached as Exhibit 8.

46.     On October 11, 2024, the Wood family filed the Lawsuit against Giant Eagle and two of its employees in the Court of Common Pleas, Cuyahoga County, Ohio for damages arising from the attack in the Shopping Center parking lot.  Ex. 1.

47.     The Lawsuit asserts four counts against Giant Eagle: (1) Premises Liability, Negligence and/or Recklessness; (2) Negligence; (3) Negligence Per Se; and (4) Loss of Consortium.  Ex. 1.

48.     The Lawsuit alleges that the attack and resulting death and injury occurred in the parking lot near Mrs. Wood's car.  Ex. 1 at ¶¶ 21-24.

49.     The Lawsuit alleges that Giant Eagle failed to provide adequate security to protect against the attack and resulting death and injury that occurred in the Shopping Center parking lot. *See generally* Ex. 1.

50.     Giant Eagle does not own the parking lot in which the attack occurred.

51.     Landlord, either on its own or with Landlord Affiliates, owns the parking lot in which the attack occurred.

52.     Giant Eagle does not lease the parking lot in which the attack occurred.

53.     Giant Eagle does not control the parking lot in which the attack occurred.

54.     Landlord, either on its own or with Landlord Affiliates, controls the parking lot in which the attack occurred.

55.     Landlord, either on its own or with Landlord Affiliates, is responsible for security in the parking lot in which the attack occurred.

12

56.     Following receipt of the Lawsuit, on October 14, 2024, Giant Eagle provided notice of the suit to CIC and Landlord and sought CIC's position as to its defense and coverage obligations toward Giant Eagle.  A true and correct copy of the October 14, 2024 notice letter is attached as Exhibit 9.

57.     On October 24, 2024, CIC responded on behalf of Landlord.  A true and correct copy of CIC's response is attached as Exhibit 10.  Relevant here, CIC's response, on behalf of Landlord, raised three issues.

58.     First, CIC stated that it "has no coverage obligations to Giant Eagle as an additional insured under [the Policies] … insofar as Giant Eagle is not named or does not otherwise qualify as an additional insured under the Policies." *Id.*

59.     Second, CIC confirmed that the Lease is an "insured contract" as defined in the Policy, such that the Policies will "cover those sums that Landlord is contractually obligated to pay [Giant Eagle] under the indemnification provision in the Lease Agreement."  *Id.*  CIC stated that Giant Eagle's request for indemnification was "premature because liability has not yet been determined in the [Lawsuit]."  *Id.*

60.     Third, CIC took the position that Landlord did not "assume liability for defense of Giant Eagle in the lease agreement" and, therefore, Cincinnati (as the insurer of an "insured contract") "has no obligation to provide a defense to Giant Eagle."  *Id.*

61.     Prior to receiving CIC's October 24, 2024 letter, Giant Eagle did not know that Landlord had failed to add and maintain Giant Eagle as an additional insured as Landlord is obligated to do under the Lease.  *See* Lease § 16.2.

62.     The very next day, Giant Eagle sought confirmation from Landlord as to whether it had, in fact, added Giant Eagle as an additional insured.  A true and correct copy of Giant Eagle's October 25, 2024 letter is attached as Exhibit 11.

63.     Landlord responded by deferring to CIC, which had already stated that Giant Eagle was not added as an "additional insured."  A true and correct copy of Landlord's response is attached as Exhibit 12.

64.     On November 26, 2024, Giant Eagle responded to CIC disagreeing with its position that the Landlord does not have an obligation to reimburse Giant Eagle's defense costs, including its reasonable attorneys' fees, in defending against the Lawsuit.  A true and correct copy of Giant Eagle's November 26, 2024 letter is attached as Exhibit 13.

65.     There are at least two provisions of the Lease that require Landlord to pay Giant Eagle's costs and expenses defending against the Lawsuit, including its reasonable attorneys' fees.

66.     First, Landlord is responsible to pay Giant Eagle's reasonable costs and expenses, including reasonable attorneys' fees, pursuant to Section 48 of the Lease, which provides:

> In the event either party is sued by a third party as a result of a violation of a covenant, warrant or agreement herein contained by the other party hereto (or which, if adversely determined, would mean that there had been a violation thereof), then the party who has violated the covenant or warrant shall be responsible for the reasonable costs and expenses in such action or proceeding against the non-violating party, including reasonable attorneys' fees.

*See* Lease § 48.

67.     All the requirements of Section 48 are met.  Giant Eagle has been "sued by a third party" (the Wood family) in connection with a fatal attack that occurred in the Shopping Center parking lot.  Under the Lease, the Shopping Center parking lot is a "Common Area" (Lease § 1.2) and Landlord agreed to "undertake[] and assume[] all duties, responsibilities and liabilities in

14

regard to … operation, supervision, use, … security, and control of all Common Areas," including the parking lot. *Id*. § 14.1.  Assuming for purposes of applying Section 48 of the Lease only that the claims asserted against Giant Eagle in the Lawsuit were adversely determined (and Giant Eagle denies any liability), it would mean that Landlord did not adequately fulfil its covenants with respect to control and security of the Common Areas.

68.    Accordingly, Section 48 of the Lease applies, and Landlord is obligated to pay Giant Eagle's reasonable attorneys' fees.

69.    Second, pursuant to Section 10 of the Lease, Landlord agreed to "indemnify and hold [Giant Eagle] harmless from and against any and all claims, damages or causes of action for damages brought on account of injury to any person or persons or property, or loss of life, arising out of the use, operation or maintenance of the Shopping Center (including the Common Areas) by Landlord …." Lease § 10 (Ex. 2).  Under well-settled Ohio law, indemnification "require[s] complete reimbursement" for claims that "another should have paid," *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 256 (Ohio 1987), and holding one harmless "means to assume all expenses incident to the defense of any claim and to fully compensate an indemnitee for all loss and expense of defending a claim or litigation." *N.Y. Cent. RR. Co. v. Gen. Motors Corp.*, 182 F. Supp. 273, 291 (N.D. Ohio 1960).  Accordingly, Landlord's obligation to indemnify and hold Giant Eagle harmless includes a present obligation to reimburse Giant Eagle for the legal fees that it has incurred, and will continue to incur, in the underlying Lawsuit.

70.    On December 30, 2024, CIC responded in writing and argued that neither Section 10 nor Section 48 of the Lease requires the Insured (Landlord) "to provide an immediate or ongoing defense and/or reimbursement of legal costs to Giant Eagle in the underlying matter." A

15

true and correct copy of CIC's December 30, 2024 letter is attached as Exhibit 14. CIC contends that certain unspecified "conditions" in those sections of the Lease have not been met. *Id.*

71. Giant Eagle has made its position on reimbursement, defense, and indemnification clear to Landlord, and Landlord has disputed Giant Eagle's position such that there is an actual controversy between the parties with respect to their respective rights and obligations; the parties have adverse legal interests with respect to these issues; and the parties' dispute is substantial, immediate, real, and ripe for resolution by this Court.

72. Landlord's obligation to pay Giant Eagle's defense costs (including reasonable attorneys' fees) exists regardless of whether CIC is the ultimate payor under the Policies.

## SUPPLEMENTAL FACTS

73. Because Landlord (Water Tower Square Limited Partnership) is a limited partnership under Ohio law (*see* Ohio Rev. Code §§ 1782.01 *et seq.*), its general partner, Water Tower Corporation, is "liable jointly and severally for all obligations of the partnership." *See* Ohio Rev. Code § 1776.36(A); *see also id.* at § 1782.24.

74. Ohio law provides that an "action may be brought against the partnership and … any or all of the partners in the same action." Ohio Rev. Code § 1776.37(B).

75. Upon information and belief, Defendant Carnegie Management & Development Corporation controls, operates, and/or manages the Shopping Center with and/or on behalf of Landlord.

76. Giant Eagle, Inc. and the other Giant Eagle defendants have reached an agreement with the plaintiffs in the Lawsuit to resolve the claims asserted by the plaintiffs against Giant Eagle, Inc. and the other Giant Eagle defendants, subject to further court approval ("Anticipated Settlement").

16

77.     The Anticipated Settlement, if carried through to completion, will also extinguish and discharge the liability of the Landlord and the Landlord Affiliates to the plaintiffs in the Lawsuit.

78.     The Anticipated Settlement is currently pending approval of the Cuyahoga County Probate Court.

79.     Upon receipt of approval from the Cuyahoga County Probate Court, the parties to the Anticipated Settlement will execute the agreement and obtain the dismissal with prejudice of all claims asserted by plaintiffs in the Lawsuit. Giant Eagle, Inc. will make a settlement payment to the plaintiffs in the Lawsuit within 60 days of an order dismissing the Lawsuit with prejudice.

80.     After Giant Eagle, Inc. makes the settlement payment, Giant Eagle, Inc. will have paid more than its proportionate share (if any) toward the settlement with plaintiffs in the Lawsuit.

81.     Giant Eagle, Inc. and the other Giant Eagle defendants have denied, and continue to deny, all responsibility and liability in connection with the Lawsuit.

82.     Giant Eagle originally filed a contribution claim against the Defendants in the Court of Common Pleas of Cuyahoga County, Ohio.

83.     On March 23, 2026, the United States District Court for the Western District of Pennsylvania entered an Order transferring this case to this Court.

84.     On April 3, 2026, this Court ordered Giant Eagle to state its intention regarding the third-party complaint that Giant Eagle had filed in the Court of Common Pleas of Cuyahoga County, Ohio.

85.     On April 17, 2026, Giant Eagle voluntarily dismissed its third-party complaint in the state court action without prejudice pursuant to Ohio R. Civ. P. 41(A)(1)(a).

86. On April 17, 2026, Giant Eagle filed a notice to inform the Court of the voluntary dismissal and to alert the Court that Giant Eagle intended to supplement and/or amend its complaint in this action to add a claim for contribution under Ohio law.

## CAUSES OF ACTION

### Count 1: Breach of Lease
*(Failure to add and maintain Giant Eagle as an additional insured)*
***Landlord***

87. Giant Eagle incorporates the preceding paragraphs as if they were fully set forth below.

88. The Lease requires Landlord to maintain Giant Eagle as an additional insured on insurance policies with at least $7 million in coverage. Lease § 16.2 (Ex. 2).

89. Landlord did not add Giant Eagle as an additional insured under any insurance policy.

90. Giant Eagle never waived nor otherwise excused Landlord's obligation to add and maintain Giant Eagle as an additional insured.

91. Landlord's failure to add and maintain Giant Eagle as an additional insured constitutes a material breach of the Lease.

92. Pursuant to Section 53 of the Lease, Landlord "shall pay to, and remain liable for, an amount equal to the portion of Tenant's loss which would have been covered by such insurance." Lease § 53.

93. Had Landlord added and maintained Giant Eagle as an additional insured as required by the Lease, Giant Eagle would have been entitled to a defense from CIC, including reimbursement of all defense costs incurred to date and those that will be incurred by Giant Eagle in defending the Lawsuit.

94.      As a result of Landlord's material breach of its obligation to add and maintain Giant Eagle as an additional insured, Giant Eagle has incurred, and will continue to incur, significant defense costs (including reasonable attorneys' fees) that it otherwise would not have incurred.

95.      In addition, had Giant Eagle been added as an additional insured, it would be entitled to up to $7 million in coverage for liability in the Lawsuit.  While Giant Eagle has not been adjudged to be liable or made any payment for damages—and Giant Eagle maintains that it is *not liable* to the Plaintiffs in the Lawsuit for any damages—Landlord's failure to add and maintain Giant Eagle as an additional insured has deprived Giant Eagle of a defense and indemnification from CIC as an "additional insured," and Giant Eagle has accordingly incurred and will continue to incur out of pocket fees for its actual defense costs.

WHEREFORE, Giant Eagle seeks (a) recovery of all defense costs incurred to date by Giant Eagle in defense against the Lawsuit (including, but not limited to, reasonable attorneys' fees); (b) an order requiring Landlord to pay Giant Eagle's defense costs, including reasonable attorneys' fees, incurred through the duration of the Lawsuit and any appeals; (c) an order requiring Landlord to indemnify Giant Eagle up to at least the policy limits for any settlement or liability payment (without otherwise limiting Landlord's obligations under the Lease); (d) recovery of all costs and expenses (with interest), including reasonable attorneys' fees, incurred in bringing and litigating this Complaint pursuant to Sections 19 and 48 of the Lease and applicable law; and (e) all other relief the Court deems just and proper.

### Count 2: Breach of Lease
*(Failure to reimburse Giant Eagle's reasonable attorneys' fees and Declaratory Judgment)*
***Landlord***

96.      Giant Eagle incorporates the preceding paragraphs as if they were fully set forth below.

97.     Giant Eagle and Landlord are parties to the Lease.

98.     Section 48 of the Lease requires Landlord to reimburse Giant Eagle's defense costs incurred to date in defending against the underlying Lawsuit (including Giant Eagle's reasonable attorneys' fees) and to continue paying such costs through the conclusion of the Lawsuit and any appeals.

99.     Giant Eagle has made timely demands for its defense costs (including reasonable attorneys' fees), and a commitment to pay such costs going forward.

100.     Landlord has not reimbursed, and has not agreed to reimburse, Giant Eagle's defense costs to date (including reasonable attorneys' fees), and has not committed to paying such costs through the duration of the underlying Lawsuit and any appeals.

101.     Landlord, both expressly and through its non-responsiveness, has rejected Giant Eagle's demands.

102.     Landlord is in material breach of Section 48 of the Lease.

103.     As a result of Landlord's material breach, Giant Eagle has incurred significant monetary damages in excess of jurisdictional minimums including, but not limited to, reasonable attorneys' fees incurred to date.

104.     Giant Eagle will continue to incur defense costs, including reasonable attorneys' fees, defending against the underlying Lawsuit.

WHEREFORE, Landlord is in material breach of the Lease, and Giant Eagle requests that judgment be entered in its favor and against Landlord in an amount to be proven at trial. Giant Eagle further requests that the Court order Landlord to perform in accordance with the Lease by reimbursing Giant Eagle's defense costs to date and paying such costs through the conclusion of the underlying Lawsuit including any appeals. Giant Eagle also seeks recovery of all costs and

expenses (with interest), including reasonable attorneys' fees, incurred in bringing and litigating this Complaint pursuant to Sections 19 and 48 of the Lease and applicable law, and all other relief the Court deems just and proper.

### Count 3: Indemnification/Breach of Lease
*(Breach of Indemnification/Hold Harmless obligation and Declaratory Judgment)*
***Landlord***

105.     Giant Eagle incorporates the preceding paragraphs as if they were fully set forth below.

106.     The claims asserted in the Lawsuit allege that the attack and resulting death and injury occurred in the Shopping Center parking lot.

107.     The Lawsuit alleges that an alleged lack of security is responsible for failing to prevent the attack.

108.     Landlord, either on its own or with Landlord Affiliates, owns the Shopping Center parking lot in which the attack occurred.

109.     The parking lot is a "Common Area" as defined in the Lease.

110.     Landlord, either on its own or with Landlord Affiliates, has control and responsibility over the parking lot including, but not limited to, "all duties, responsibilities, and liabilities in regard to maintenance, repairs, replacements, operation, supervision, use, striping, security and control of all Common Areas …."  Lease § 14.1 (Ex. 2).

111.     The Lease requires Landlord to "indemnify and hold [Giant Eagle] harmless from and against any and all claims, damages or causes of action for damages brought on account of injury to any person or persons or property, or loss of life, arising out of the use, operation or maintenance of the Shopping Center (including the Common Areas) by Landlord …."  Lease § 10 (Ex. 2).

112. The Lawsuit is brought on account of alleged injury to the Plaintiffs, including loss of life, arising out of the use, operation, or maintenance of the Common Areas of the Shopping Center by Landlord.

113. Landlord's obligation under Section 10 of the Lease to indemnify and hold Giant Eagle harmless includes, but is not limited to, reimbursement of Giant Eagle's defense costs (inclusive of reasonable attorneys' fees) incurred to date and that it will incur through the duration of the Lawsuit.

114. Landlord has denied any duty to defend Giant Eagle and/or otherwise reimburse and pay Giant Eagle's defense costs, including reasonable attorneys' fees.

115. Landlord's failure to reimburse Giant Eagle's defense costs, and its rejection of its obligation to pay such costs going forward through the conclusion of the Lawsuit, constitutes a breach of Section 10 of the Lease.

WHEREFORE, Landlord is in material breach of the Lease, and Giant Eagle requests that judgment be entered in its favor and against Landlord in an amount to be proven at trial. Giant Eagle further seeks an order that (i) Landlord has an obligation under Section 10 of the Lease to indemnify and hold harmless Giant Eagle in the underlying Lawsuit, and such obligation includes (but is not limited to) reimbursement of Giant Eagle's defense costs (including reasonable attorneys' fees) in the underlying Lawsuit and any appeals; and (ii) Landlord is liable to Giant Eagle to satisfy any judgment, legal liability, settlement, and/or damages or loss incurred by Giant Eagle incident to the Lawsuit. Giant Eagle also seeks recovery of all costs and expenses (with interest), including reasonable attorneys' fees, incurred in bringing and litigating this Complaint pursuant to Sections 19 and 48 of the Lease and applicable law, and all other relief the Court deems just and proper.

## Count 4: Common Law / Equitable Indemnification
### *Landlord*

116.    Giant Eagle incorporates the preceding paragraphs as if they were fully set forth below.

117.    In addition, and/or in the alternative to Landlord's contractual indemnification obligations, Landlord is liable to Giant Eagle, and is obligated to defend and indemnify Giant Eagle, under principles of common law and/or equitable indemnification.

118.    Landlord, either on its own or with Landlord Affiliates, owns and controls the Shopping Center parking lot in which the attack occurred.

119.    Giant Eagle does not own, lease, or control the Shopping Center parking lot.

120.    Landlord has further undertaken the sole responsibility and liability for such "Common Areas," including the provision of security in the parking lot in which the attack occurred.

121.    Through the Lease, Landlord agreed that it would undertake and assume all duties, responsibilities and liabilities for supervision, security, and control of the Common Areas, which includes the parking lot.

122.    Landlord undertook and accepted these obligations even if the law otherwise imposes such duties or responsibilities on tenants.

123.    To the extent Giant Eagle has already incurred legal fees and other costs in defending against the Lawsuit, will continue to incur such fees and costs going forward, and to the extent Giant Eagle incurs any liability and/or makes a settlement payment, Landlord is obligated under the common law and equitable principles to indemnify Giant Eagle for any such fees, costs, liability and/or payments.

23

WHEREFORE, Giant Eagle seeks an order that (i) Landlord has an obligation under the common law to indemnify and hold harmless Giant Eagle in the underlying Lawsuit, and (ii) Landlord's obligation includes reimbursement and payment of Giant Eagle's defense costs in the underlying Lawsuit and any appeals including, but not limited to, Giant Eagle's reasonable attorneys' fees.  Giant Eagle further requests that Landlord be adjudged liable to Giant Eagle to satisfy any judgment, legal liability, settlement, and/or damages or loss incurred by Giant Eagle incident to the Lawsuit and any appeals.  Giant Eagle also seeks recovery of all costs and expenses (with interest), including reasonable attorneys' fees, incurred in bringing and litigating this Complaint pursuant to Sections 19 and 48 of the Lease and applicable law, and all other relief the Court deems just and proper.

<u>**Count 5: Contribution under Ohio Rev. Code § 2307.25 and Common Law**</u>
*All Defendants*

124.    Giant Eagle incorporates the preceding paragraphs as if they were fully set forth below.

125.    In addition and/or in the alternative to the relief requested above, Giant Eagle, Inc. seeks contribution from all Defendants in connection with the settlement payment to be made to the plaintiffs in the Lawsuit.

126.    Giant Eagle, Inc. has agreed to a settlement of the Lawsuit and agreed to make a payment to the plaintiffs in the Lawsuit, subject to further court approval.

127.    The Anticipated Settlement, if approved, will extinguish the liability of the Defendants to the plaintiffs in the Lawsuit.

128.    The Defendants are liable to Giant Eagle, Inc. through Ohio Rev. Code § 2307.25(A) and applicable common law.

129.    The Defendants are solely liable, jointly and severally liable with other non-party entities, jointly and severally liable with those other entities and/or Giant Eagle, Inc., and/or liable over to Giant Eagle, Inc. for all or a proportionate share of the settlement payment.

130.    In the alternative, if the Anticipated Settlement is not approved or if it otherwise does not become effective, and if the plaintiffs in the Lawsuit proceed with their claims against Giant Eagle, Inc. and/or the other Giant Eagle defendants, the Defendants should be liable for contribution through Ohio Rev. Code § 2307.25(A) and applicable common law for any liability, judgment, and/or payment.

WHEREFORE, Giant Eagle, Inc. demands judgment against the Defendants for the anticipated settlement payment (and/or for any liability, judgment, or other payment) to the extent that any such payments, liabilities, and/or judgments are caused by Defendants' tortious acts or conduct, or for which contribution and/or proportionate liability is otherwise appropriate in accordance with the evidence and Ohio law. Giant Eagle, Inc. further asks that it be awarded its costs, including attorneys' fees, and any further relief that the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiffs demand a jury trial.

Dated: April 30, 2026                                                  Respectfully submitted,

                                                  */s/ Daniel J. Stuart*
                                                  Daniel J. Stuart (*pro hac vice*)
                                                  stuart@marcus-shapira.com
                                                  Matthew Mazgaj (OH 0105449)
                                                  mazgaj@marcus-shapira.com
                                                  Brian W. Castello (*pro hac vice*)
                                                  castello@marcus-shapira.com

25

MARCUS & SHAPIRA LLP
One Oxford Centre, 35th Floor
301 Grant Street
Pittsburgh PA  15219
Telephone:  (412) 471-3490
Facsimile:  (412) 391-8758

*Counsel for Giant Eagle, Inc. and*
*Riser Foods Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2026, a true and correct copy of the foregoing was electronically filed and served via operation of the Court's CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record entitled to notice who are registered users of ECF.

*/s/ Daniel J. Stuart*
Daniel J. Stuart